UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
MATTHEW NADOLECKI,

                                  Plaintiff,                    <u>REPORT AND</u>
                                                               <u>RECOMMENDATION</u>

             -against-                                         CV 09-3888 (SJF)(ETB)

NEW YORK STATE DEPARTMENT OF
TAXATION AND FINANCE; ANTHONY VANO, In his
Official Capacity and Individually; THOMAS VARGHESE, In
his Official Capacity and Individually; GREGORY WILEY,
In his Official Capacity and Individually; WILLIAM
WHELTHY, In his Official Capacity and Individually;
RICHARD GAMBINO, In his Official Capacity and
Individually; DEBORAH S. DAMMER, In her Official
Capacity and Individually; BARBARA L. SEVERANCE, In
her Official Capacity and Individually; REACHEL COMBS,
In her Official Capacity and Individually; NONIE MANION
(a.k.a. HONORA MANION), In her Official Capacity and
Individually; MARK VOLK, In his Official Capacity and
Individually; and ELLEN MINDEL, In her Official Capacity
and Individually,

                                  Defendants.
--------------------------------------------------------------------------X

TO THE HONORABLE SANDRA J. FEUERSTEIN, United States District Judge:

         Before the Court is the defendants' motion to dismiss all of the claims contained in the

<u>pro se</u> plaintiff's Second Amended Complaint, pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).  For the following reasons, I recommend that defendants' motion be

granted and that the Second Amended Complaint be dismissed in its entirety.

<u>FACTS</u>

The <u>pro</u> <u>se</u> plaintiff, Matthew Nadolecki, was hired by defendant New York State Department of Taxation and Finance (the "Department of Tax and Finance") as a probationary Tax Auditor Trainee 1, effective June 30, 2005.  (2d Am. Compl. ¶¶ 35, 41.)  On October 18, 2005, approximately four months into plaintiff's employment, he received his first evaluation, signed by plaintiff's direct supervisor, defendant Thomas Varghese ("Varghese"), which indicated that plaintiff was performing his position proficiently.  (2d Am. Compl. ¶ 39.)  An additional Trainee Development Report, also completed by Varghese on October 18, 2005, further indicated that there were no deficiencies with plaintiff's job performance.  (2d Am. Compl. ¶ 40.)

On December 5, 2005, approximately five months after plaintiff was hired, he received a termination letter signed by defendant Deborah S. Dammer ("Dammer"), indicating that plaintiff's termination was effective December 9, 2005.  (2d Am. Compl. ¶ 43.)  On February 17, 2006, plaintiff's labor union, the New York State Public Employees Federation, sent a letter to Dammer advising her that the Department of Tax and Finance's regulations require that probationary employees be provided with fourteen days notice prior to termination.  (2d Am. Compl. ¶¶ 42, 44.)  Defendants did not adjust plaintiff's termination date.  (2d Am. Compl. ¶ 44.)

Plaintiff alleges that he suffers from two disabilities - a severe anxiety disorder and a gender identity disorder.  (2d Am. Compl. ¶¶ 37-38.)  According to plaintiff, his gender identity disorder is caused by a physical impairment that resulted from his premature birth, which in turn

caused the failure of his sex organs to fully develop.[1]  (2d Am. Compl. ¶ 65.)  This underdevelopment of his sex organs resulted in plaintiff's body's inability to produce adequate levels of male and female hormones for plaintiff to function in society as a "typical male."  (2d Am. Compl. ¶ 65.)  As a result, plaintiff describes himself as a "woman trapped in a man's body" and has received medical care in the form of prescription medication and hormone therapy for the last several years to help treat his condition.  (2d Am. Compl. ¶¶ 66-67.)  Plaintiff alleges that in order to "cure" his gender identity disorder, he will need to undergo gender reassignment surgery to permanently become a female.  (2d Am. Compl. ¶ 68.)

According to plaintiff, defendants became aware of his disabilities on November 17, 2005 when he submitted a "Report of Accident, Occupational Disease or Safety Hazard," indicating that he suffers from "[d]ifficulty breathing, chest tightness, back pain, fever, anxiety and emotional distress."  (2d Am. Compl. ¶ 52.)  Plaintiff alleges that his disabilities served as the basis for defendants' termination of his employment and that the stated reasons - plaintiff's frequent tardiness and lack of dependability - are pretextual and untrue.  (2d Am. Compl. ¶¶ 45-53.)  Plaintiff further alleges that, during the course of his employment, he requested a reasonable accommodation for his gender identity disorder, which was denied, in violation of his civil rights, for failure to provide adequate medical documentation.  (2d Am. Compl. ¶¶ 55-59.)

_____

[1]  While plaintiff has alleged from the commencement of this action that he suffers from both an anxiety disorder as well as gender identity disorder, prior to the Second Amended Complaint, plaintiff did not allege that his gender identity disorder results from a physical impairment.  (Compl. ¶ 7; Am. Compl. ¶ 38.)  Rather, it appears that after being served with defendants' initial motion to dismiss in July 2010, which was subsequently terminated as moot and refiled in January 2010, and which pointed out that only those gender identity disorders that result from a physical impairment are covered under the Americans with Disabilities Act, plaintiff amended his complaint to allege that his gender identity disorder results from a physical impairment.  (2d Am. Compl. ¶ 65.)

Finally, plaintiff alleges that on December 5, 2005, he requested time off from work to file a discrimination complaint with the Equal Employment Opportunity Commission (the "EEOC"). (2d Am. Compl. ¶ 54.) According to plaintiff, after an hour of waiting for a response to his request, he was called into his supervisor, Varghese's, office and terminated. (2d Am. Compl. ¶ 54.) Plaintiff alleges that defendants discriminated against him based on his gender and retaliated against him for seeking to commence a discrimination complaint with the EEOC by intimidating and harassing his witnesses, who include co-workers at the Department of Tax and Finance. (2d Am. Compl. ¶¶ 36, 69-105.)

On June 6, 2006, plaintiff filed a discrimination charge with the New York State Division of Human Rights ("SDHR"), alleging that the Department of Tax and Finance discriminated against him on the basis of gender and disability, in violation of the New York Human Rights Law, N.Y. Exec. Law § 296. (Robinson Aff., Ex. A.) Plaintiff's SDHR charge also alleged a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and authorized the cross-filing of his complaint with the EEOC. (Compl. Ex. 2.) On January 29, 2009, the SDHR issued a finding of "no probable cause" with respect to plaintiff's charge. (Robinson Aff., Ex. A.)

Plaintiff thereafter commenced an Article 78 proceeding in New York Supreme Court, Albany County, seeking to reverse the SDHR's finding of no probable cause. (Robinson Aff., Ex. B.) By decision dated October 23, 2009, the state court dismissed plaintiff's petition, finding that the SDHR's investigation was neither inadequate nor abbreviated, as plaintiff asserted. (Robinson Aff., Ex. B.)

As authorized, the SDHR cross-filed plaintiff's discrimination charge with the EEOC,

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the ADA. (Robinson Aff., Ex. A.)  By a Dismissal and Notice of Rights dated June 1, 2009, the EEOC advised plaintiff that it had adopted the findings of the SDHR and issued plaintiff a right to sue letter.  (2d Am. Compl., Ex. A.)  Plaintiff commenced the within action on September 1, 2009.

The Second Amended Complaint contains the following eleven causes of action: (1) gender discrimination in violation of Title VII; (2) gender and disability discrimination in violation of the New York Human Rights Law; (3) retaliation in violation of Title VII; (4) retaliation in violation of the New York Human Rights Law; (5) violation of plaintiff's Fourteenth Amendment equal protection rights based on gender and disability discrimination, pursuant to 42 U.S.C. § 1983; (6) violation of plaintiff's equal protection rights based on gender and disability discrimination, pursuant to the New York State Constitution; (7) First Amendment retaliation, pursuant to 42 U.S.C. § 1983; (8) violation of plaintiff's Fourteenth Amendment due process rights, pursuant to 42 U.S.C. § 1983; (9) waste; (10) conspiracy to violate plaintiff's civil rights, pursuant to 42 U.S.C. § 1985; and (11) disability discrimination in violation of the ADA.

Defendants seek dismissal of all of the claims contained in the Second Amended Complaint on the grounds that the Court lacks subject matter jurisdiction over most of them and that, for those claims over which the Court does have jurisdiction, plaintiff has failed to state a claim upon which relief may be granted.

DISCUSSION

I.      Legal Standard

A district court should dismiss a case for lack of subject matter jurisdiction under Federal

Rule of Civil Procedure 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also Fed. R. Civ. P. 12(b)(1). When reviewing a motion to dismiss for lack of jurisdiction, the Court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to Plaintiff[]." Wood v. GMC, No. CV 08-5224, 2010 U.S. Dist. LEXIS 96157, at *9 (E.D.N.Y. Aug. 23, 2010) (quoting J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004)) (additional citation omitted) (alteration in original). The Court may also "consider evidence outside the pleadings, such as affidavits" when determining whether it has jurisdiction. Stoothoff v. Apfel, No. 98 Civ. 5724, 1999 U.S. Dist. LEXIS 10459, at *1 n.1 (S.D.N.Y. July 7, 1999) (citing cases). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Wood, 2010 U.S. Dist. LEXIS 96157, at *9 (quoting Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005)).

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when the "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). As with a 12(b)(1) motion, the Court is required to accept as true all of the allegations contained in the complaint. See Iqbal, 129 S. Ct. at 1949; Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements . . . are not entitled to the assumption of truth." <u>Iqbal</u>, 129 S. Ct. at 1949-50 (citation omitted); <u>see also</u> <u>Twombly</u>, 555 U.S. at 555 (stating that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. <u>Iqbal</u>,129 S. Ct. at 1950. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 555 U.S. at 557). Although Rule 8 of the Federal Rules of Civil Procedure "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." <u>Iqbal</u>, 129 S. Ct. at 1950. Rather, only a complaint that "states a plausible claim for relief" will survive a motion to dismiss. <u>Id.</u>


III.  <u>Eleventh Amendment Immunity</u>

A threshold issue requiring determination is whether plaintiff can maintain many of the claims he alleges against the Department of Tax and Finance, which is a state agency. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity," <u>Gorton v. Gettel</u>, 554 F.3d 60, 62 (2d Cir. 1009) (quoting <u>Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.</u>, 466 F.3d 232, 236 (2d Cir. 2006)) (additional citation omitted), or there has been "an abrogation of constitutional immunity by Congress." <u>Smith v. N.Y. State Dep't of Taxation and Fin.</u>, No. 01 CV 1776, 2002 U.S. Dist. LEXIS 10375, at *8 (E.D.N.Y. May 17, 2002) (citing <u>Welch v. Texas Dep't of Highways and Public Transport.</u>, 483 U.S. 468, 472 (1987)). "This bar exists where the relief sought is legal or

equitable." Dube v. State Univ. of New York, 900 F.2d 587, 594 (2d Cir. 1990) (quoting Papasan v. Allain, 478 U.S. 265, 276 (1986)).

Eleventh Amendment immunity extends to "state agents and state instrumentalities that are, effectively, arms of a state." Gorton, 554 F.3d at 62 (quoting Woods, 466 F.3d at 236).  As such, "[t]he [Department of Tax and Finance] is a state agency entitled to Eleventh Amendment immunity." Smith, 2002 U.S. Dist. LEXIS 10375, at *8 (citation omitted).

Eleventh Amendment immunity also extends to state "officials acting in [their] official capacity." Sullivan, 2011 U.S. Dist. LEXIS 36381, at *9(citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984)); see also Qader v. Cohen & Slamowitz, No. 10 cv 1664, 2011 U.S. Dist. LEXIS 2388, at *8 (S.D.N.Y. Jan. 10, 2011) ("A state agency with state officials acting in their official capacities is similarly entitled to immunity.").  Accordingly, the individual defendants named in plaintiff's Second Amended Complaint are also entitled to invoke the protections of Eleventh Amendment immunity for those claims asserted against them in their official capacities.

Eleventh Amendment immunity has been extended to claims brought pursuant to 42 U.S.C. §§ 1983 and 1985, as well as the ADA and the New York Human Rights Law.  See, e.g.,Sullivan v. City of New York, No. 08 Civ. 7294, 2011 U.S. Dist. LEXIS 36381, at *10 (S.D.N.Y. Mar. 25, 2011) (stating that "the Supreme Court has held that Congress did not validly abrogate the States' sovereign immunity from suits by private individuals for money damages under Title I of the ADA") (citing Board of Trs. of the Univ. of Alabama v. Garrett, 531 U.S.

356, 374 n.9 (2001));[2] <u>Hodge v. Sidorowicz</u>, No. 10 Civ. 428, 2011 U.S. Dist. LEXIS 30765, at

*13 (S.D.N.Y. Mar. 24, 2011) ("The Eleventh Amendment does bar suits for money damages

against a state or its agencies under § 1983"); <u>Moore v. N.Y. State Div. of Parole</u>, No. 06-CV-

1973, 2008 U.S. Dist. LEXIS 72260, at *21 (E.D.N.Y. Sept. 23, 2008) (noting that the New York

State Executive Law § 296 does not waive the state's immunity to federal court lawsuits and

dismissing plaintiff's claims against the state pursuant to the New York Human Rights Law);

<u>Peavey v. Polytechnic Inst. of N.Y.</u>, No. CV 91-0149, 1991 U.S. Dist. LEXIS 7299, at *3

(E.D.N.Y. May 9, 1991) (noting that "the state may not be sued under § 1985" as a result of

Eleventh Amendment immunity).

However, as stated above, where Congress has abrogated a state's constitutional

immunity, there is no protection from suit under the Eleventh Amendment.  In <u>Fitzpatrick v.

Bitzer</u>, 427 U.S. 445 (1976), the Supreme Court held that, by amending Title VII in 1972 to

include state and local governments within the definition of "employers," Congress had

expressed a clear intent to abrogate the states' Eleventh Amendment immunity under Title VII.

<u>See</u> <u>id.</u> at 449 n.2.  Accordingly, as the Second Circuit has stated, "a state and its agencies have

been subject to suit under Title VII since 1972 and have no Eleventh Amendment immunity."

<u>Davis v. State Univ. of New York</u>, 802 F.2d 638, 63 n.1 (2d Cir. 1986).  Similarly, the Eleventh

Amendment "does not . . . bar suits against state officials . . . in their individual capacities."

<u>Hodge</u>, 2011 U.S. Dist. LEXIS 30765, at *13 (citing <u>Davis v. New York</u>, 316 F.3d 93, 102 (2d

---

[2]  The Court also notes that several courts within this circuit have held that "official
capacity claims are not viable under the ADA." <u>Fox v. State Univ. of New York</u>, 497 F. Supp.
2d 446, 451 (collecting cases).  Accordingly, even if the individual defendants were not entitled
to Eleventh Amendment immunity with respect to plaintiff's ADA claims, the official capacity
claims are still subject to dismissal.

Cir. 2002)) (additional citation omitted).

Based on the foregoing, it is clear that all of plaintiff's Section 1983, Section 1985, ADA and New York Human Rights Law claims against the Department of Tax and Finance, as well as the individual defendants in their official capacities, are barred by the Eleventh Amendment. The Title VII claims, however, are not. Accordingly, I recommend that plaintiff's Section 1983, Section 1985, ADA and New York Human Rights Law claims, as alleged against the Department of Tax and Finance and the individual defendants in their official capacities be dismissed.

III.     Title VII

    A.     The Individual Defendants

        Plaintiff alleges that defendants have discriminated against him on the basis of his gender and retaliated against him in violation of Title VII. At the outset, the Court notes that it is black-letter law that there is no individual liability under Title VII. See, e.g., Arculeo v. On-Site Sales & Mktg., L.L.C., 425 F.3d 193, 196 n.2 (2d Cir. 2005) (noting that "Title VII, while imposing liability on employers, does not impose liability on the supervisory personnel of employers"); Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) (affirming dismissal of Title VII claims against individual defendant in his personal capacity because "under Title VII individual supervisors are not subject to liability"); Hodge v. City of Long Beach, No. 07-CV-4084, 2010 U.S. Dist. LEXIS 138344, at *31 (E.D.N.Y. Dec. 28, 2010) (noting that "Title VII does not encompass individual liability"). Moreover, where a plaintiff is able to sue a government entity directly, claims against individual defendants in their official capacities are "unnecessary." Shaw v. United States Postal Serv., No. 09 Civ. 6617, 2010 U.S. Dist. LEXIS

101322, at *41-12 (S.D.N.Y. Aug. 16, 2010) (dismissing Title VII claim against individual

defendant in official capacity because plaintiff not barred from suing government entity directly);

see also Hallett v. N.Y. State Dep't of Corr. Servs., 109 F. Supp. 2d 190, 199 (S.D.N.Y. 2000)

("[B]because clams against government officials in their 'official capacity' are often permitted to

avoid Eleventh Amendment and sovereign immunity issues, such claims are not necessary when

an individual can sue a government entity directly."); Emmons v. City Univ. of New York, 715

F. Supp. 2d 394, 410-11 (E.D.N.Y. June 2010) (dismissing official capacity claims under Title

VII on the grounds that they are "redundant" in light of the claims brought against the public

entity and noting that "many recent decisions in this Circuit have rejected Title VII official

capacity claims").  In light of the foregoing, I recommend that the Title VII claims against the

individual defendants in their official and individual capacities be dismissed.

      B.      The Department of Tax and Finance

      With respect to the Title VII claims alleged against the Department of Tax and

Finance, as noted above, such claims are not immune from prosecution under the Eleventh

Amendment.  Plaintiff alleges that the Department of Tax and Finance discriminated against him

on the basis of his gender and retaliated against him, in violation of Title VII.

      1.      Gender Discrimination

      Defendants assert that plaintiff's claim of gender discrimination is barred

by res judicata as a result of the SDHR's January 29, 2009 determination of "no probable cause,"

which was affirmed by the state court on October 23, 2009.  (Robinson Aff., Ex. A-B.)  As a

general rule, federal courts are required "to give the same preclusive effect to state court

judgments that those judgments would be given in the courts of the State from which the

judgments emerged." Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466 (1982). "In adherence to this rule, the Court of Appeals has previously held that a 'New York state court affirmation of the [SDHR's] finding of no probable cause would preclude federal litigation based on the same facts.'" Wilson v. Limited Brands, Inc., No. 08 CV 3431, 2009 WL 1069165, at *1 (S.D.N.Y. Apr. 17, 2009) (quoting Yan Yam Koo v. Dep't of Bldgs. of the City of New York, 218 Fed. Appx. 97, 98 (2d Cir. 2007)) (alteration in original). Accordingly, "a judgment pursuant to Article 78 may preclude relitigation of issues already decided in that earlier judgment."[3] Wilson, 2009 WL 1069165, at *1 (quoting LaFleur v. Whitman, 300 F.3d 256, 272 (2d Cir. 2002)).

Res judicata, also called claim preclusion, is a doctrine that aims to prevent the relitigation of claims that were or could have been raised in a previous action. See Farbstein v. Hicksville Pub. Library, 323 F. Supp. 2d 414, 422 (E.D.N.Y. 2004). "To prove [that a claim is barred by the doctrine of res judicata] . . . a party must show that: (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiff[] or those in privity with [him]; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000).

Similarly, under New York law, collateral estoppel will be applied "if the issue in the second action is identical to an issue in the first action, necessarily decided and material in the

---

[3] By contrast, "unreviewed state administrative proceedings" are not entitled to any preclusive effect. University of Tenn. v. Elliot, 478 U.S. 788, 796 (1986); see also DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 114 (2d Cir. 1987) (finding that plaintiff was "entitled to a trial de novo on his Title VII claim, since he did not seek state court review of the SDHR administrative proceedings adjudicated against him").

first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." Wilson, 2009 WL 1069165, at *1 (quoting LaFleur, 300 F.3d at 271). The Supreme Court has held that the SDHR's review process, coupled with judicial review, provides a plaintiff with a full and fair opportunity to litigate a claim of employment discrimination. See Kremer, 456 U.S. at 483-85 (finding preclusion where Article 78 proceeding affirmed SDHR's finding of no probable cause with respect to plaintiff's Title VII discrimination claim).

Here, plaintiff filed his SDHR charge against the Department of Tax and Finance on June 6, 2006, alleging gender and disability discrimination in violation of the New York Human Rights Law. (Robinson Aff., Ex. A at 1.) Plaintiff's charge was also cross-filed with the EEOC under Title VII and the ADA. (Robinson Aff., Ex. A at 2.) In its January 29, 2009 decision, the SDHR found, "[a]fter investigation, and following opportunity to review the related information and evidence by the named parties," that there was no probable cause to believe the Department of Tax and Finance had engaged in the unlawful discriminatory practices complained of by plaintiff. (Robinson Aff., Ex. A at 1.) The SDHR specified in its decision the bases for its findings, including: (1) that the investigation record lacked evidence to support plaintiff's claim that he was terminated because of his disability or sex in that although plaintiff had requested a reasonable accommodation due to his gender identity disorder just days prior to his termination, plaintiff was on notice that the Department of Tax and Finance was concerned with his job performance prior to his request; (2) the documentation submitted in support of plaintiff's reasonable accommodation request demonstrates that "no immediate change to [plaintiff's] work environment was indicated"; and (3) plaintiff was a probationary employee who had received an unsatisfactory evaluation after six months of employment, which was completed prior to

plaintiff's notification that he suffers from a disability. (Robinson Aff., Ex. A at 1-2.) As a result, the SDHR dismissed plaintiff's discrimination charge. (Robinson Aff., Ex. A at 2.) Similarly, on September 9, 2010, the EEOC advised plaintiff that it had "adopted the findings of the state or local fair employment practices agency that investigated [the] charge." (2d Am. Compl., Ex. A.)

Plaintiff thereafter commenced an Article 78 proceeding in New York Supreme Court, seeking a reversal of the SDHR's decision. (Robinson Aff., Ex. B at 2.) Plaintiff based his petition on the grounds that the SDHR investigator assigned to his discrimination charge never met with him and failed to respond to his telephone calls. (Robinson Aff., Ex. B at 2.) As a result, plaintiff asserted that he was not provided with an opportunity to submit all of the evidence he had in the case.[4] (Robinson Aff., Ex. B at 2.) The court found, however, that the SDHR's investigation "was not inadequate or abbreviated," but rather "was made after careful deliberation." (Robinson Aff., Ex. B at 3.) According to the court, the SDHR "conducted two lengthy interviews of [plaintiff], accepted his additional submissions and had contact with him numerous times over the course of the investigation." (Robinson Aff., Ex. B at 3.) Accordingly, the court dismissed plaintiff's Article 78 petition. (Robinson Aff., Ex. B at 3.)

Plaintiff's SDHR charge - and the charge cross-filed with the EEOC - both alleged discrimination by the Department of Tax and Finance on the basis of plaintiff's gender. The

---

[4] Similarly, plaintiff asserts herein that res judicata and collateral estoppel should not apply to his Title VII claim because he "did not have a fair opportunity to present evidence to the [SDHR] since the [SDHR] investigator failed to finish the initial intake interview with the Plaintiff and afterwards did not return Plaintiff's numerous calls requesting to meet to discuss ongoing acts of discrimination and retaliation." (Pl. Mem. of Law 9.) According to plaintiff, he "was denied an equitable opportunity to present [the SDHR] with his evidence." (Id.)

SDHR found no probable cause to believe plaintiff was subjected to discrimination by the Department of Tax and Finance and the EEOC adopted that finding. The SDHR's decision was upheld by the New York Supreme Court, which specifically rejected the exact same argument that plaintiff asserts herein - that he was denied the opportunity to fully and fairly litigate his SDHR charge. Based on the foregoing, plaintiff's Title VII claim of gender discrimination was "necessarily decided" by the state court in the Article 78 decision issued on October 23, 2009 and therefore precludes plaintiff from pursuing that claim in this action. Accordingly, I recommend that plaintiff's Title VII claim for gender discrimination as alleged against the Department of Tax and Finance be dismissed.

2.    Retaliation

While plaintiff's gender discrimination claim was clearly included in his SDHR charge, it does not appear that plaintiff's Title VII retaliation claim was as well.[5] However, as discussed below, plaintiff certainly could have included a retaliation claim in his SDHR charge and is therefore precluded from raising such a claim here.

Title VII prohibits employers from retaliating against employees for opposing discriminatory employment practices. See 42 U.S.C. § 2000e-3(a). "Title VII . . . is violated when a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause" or "when an employer is motivated by retaliatory animus, even if valid objective reasons for the discharge exist." Cosgrove v. Sears, Roebuck & Co., 9

_____

[5]  While defendants have submitted the SDHR decision to the Court for review in connection with the within motion, neither party has provided the Court with plaintiff's actual SDHR charge. However, the Court discovered plaintiff's SDHR charge attached as an exhibit to his original Complaint and has examined its contents. The SDHR charge does not contain any claim for retaliation.

F.3d 1033, 1039 (2d Cir. 1993) (citing cases). To establish a prima facie case of retaliation under Title VII, plaintiff must demonstrate that (1) he engaged in a statutorily protected activity; (2) his employer was aware of this activity; (3) he suffered an adverse employment action; and (4) there is a "causal connection" between the protected activity and the adverse employment action. Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205 (2d Cir. 1996) (citing Cifra v. General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)). Once plaintiff satisfies this initial burden, "the employer is required to offer a legitimate, non-discriminatory business rationale for its conduct." Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). The burden then shifts back to the plaintiff "to prove 'by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" Back v. Hastings on Hudson U.F.S.D, 365 F.3d 107, 123 (2d Cir. 2004) (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

Here, plaintiff alleges that he engaged in a protected activity by filing his discrimination charge with the SDHR, which the Department of Tax and Finance was aware of because plaintiff requested time off from work in December 2005 to submit the charge. (2d Am. Compl. ¶ 54.) Before filing the actual charge with the SDHR, however, plaintiff was terminated based on his unsatisfactory six-month evaluation. (2d Am. Compl. ¶¶ 45-51, 54.) Plaintiff did not actually file his SDHR charge until June 6, 2006. Accordingly, since the alleged retaliation occurred more than six months prior to the filing of plaintiff's SDHR charge, plaintiff certainly had ample opportunity to include such a claim in his SDHR charge; yet, he failed to do so. As stated supra, res judicata applies to both claims asserted in a prior action as well as those claims that could

have been raised in the prior action.  See Monahan, 214 F.3d at 285.  Since plaintiff could have asserted a retaliation claim in his prior SDHR charge - but chose not to do so - such a claim is barred by res judicata as well.

Moreover, with respect to the merits of plaintiff's retaliation claim, although plaintiff conclusorily asserts that "[i]t is clear that the defendant decided to retaliate against [him] after finding out that the plaintiff was in the process of commencing a discrimination complaint against the defendants," (2d Am. Compl. ¶ 54), there is nothing alleged in the Second Amended Complaint to support this claim.  Such speculative assertions fail to meet the burden imposed on plaintiff under Iqbal and Twombly.[6]  See Iqbal, 129 S. Ct. at 1949-50; Twombly, 555 U.S. at 555-57.

Plaintiff further asserts that the Department of Tax and Finance retaliated against him after his termination by harassing, threatening and intimidating his witnesses.  (2d Am. Compl. ¶¶ 69-103.)  The Second Amended Complaint contains numerous allegations detailing how the Department of Tax and Finance - and the individual defendants - committed unfavorable employment actions against plaintiff's three witnesses, Richardeen Agard, Michael Fetcho and Vas Anand.  (Id.)  However, "such a claim is not actionable, as a plaintiff does not have standing to bring suit against an employer for an adverse action taken against a third party."  Garel v. City of New York, No. CV 04-3506, 2007 U.S. Dist. LEXIS 8536, at *4 (E.D.N.Y. Jan. 9, 2007)

---

[6]  Plaintiff also alleges that he "complained about discrimination and retaliation numerous times to defendants" when he met with an investigator within the Department of Tax and Finance, Richard Gambino.  (2d Am. Compl. ¶ 104.)  According to plaintiff, "Gambino failed to adequately and properly investigate plaintiff's complaints, and aided the defendants in the cover-up process."  (Id.)  Again, such conclusory allegations fail to meet the standards set forth in Iqbal and Twombly.

(citing <u>Kern v. City of Rochester</u>, 93 F.3d 38, 44 (2d Cir. 1996)) (additional citation omitted).

Accordingly, "any assertion of personal injury to the plaintiff arising from the actions allegedly taken against [his three witnesses] is too speculative" to form the basis of a retaliation claim. <u>Id.</u>

The actions alleged by plaintiff in the Second Amended Complaint are "not the kind of 'adverse action' that Title VII . . . envisions" and "[t]here is no authority which broadens the definition of 'adverse act' as far as plaintiff attempts here." <u>Garel v. City of New York</u>, CV-04-3506, 2006 U.S. Dist. LEXIS 76601, at *8 (E.D.N.Y. Oct. 23, 2006), <u>adopted by</u>, 2007 U.S. Dist. LEXIS 8536 (E.D.N.Y. Jan. 9, 2007).

For the foregoing reasons, I recommend that plaintiff's Title VII retaliation claim be dismissed as well, thereby dismissing all of plaintiff's Title VII claims against all defendants.

IV.     <u>The Remaining Federal Individual Capacity Claims</u>

    A.     <u>ADA</u>

While the Second Circuit has yet to explicitly address whether there is individual liability under Title I of the ADA - which pertains to disability discrimination, as alleged here - it has held that "the retaliation provision of the ADA . . . cannot provide for individual liability." <u>Spiegel v. Schulmann</u>, 604 F.3d 72, 79 (2d Cir. 2010). However, "[b]ecause courts 'routinely apply arguments regarding individual liability' to Title VII and the ADA 'interchangeably,' . . . courts in this circuit have held that the definition of 'employer' in the ADA . . . excludes individual employee liability" just as Title VII does. <u>Parada v. Banco Indus. De Venezuela, C.A.</u>, No. 10 Civ. 0883, 2011 U.S. Dist. LEXIS 14799, at *12 (S.D.N.Y. Feb. 15, 2011) (quoting <u>EEOC v. AIC Sec. Investigations, Ltd.</u>, 55 F.3d 1276, 1279-81 (7th Cir. 1995)) (additional

citations omitted); see also Fox v. State Univ. of New York, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) ("The plaintiff's claims against the individual defendants in their individual capacity must be dismissed because there is no individual liability under Title I or Title II of the ADA."); Yaba v. Cadwalader, Wickersham & Taft, 931 F. Supp. 271, 274 (S.D.N.Y. 1996) (noting that "the ADA, like Title VII, does not provide for liability by individual employees").  Accordingly, I recommend that the remaining ADA claims be dismissed against the individual defendants in their individual capacities.

    B.    <u>Sections 1983 and 1985</u>

        "For § 1983 actions arising in New York, the statute of limitations is three years." Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994) (citing Owens v. Okure, 488 U.S. 235, 250-51 (1989)); see also Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002) ("In Section 1983 actions, the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions,' . . . and the parties agree that in this case that period is three years."); Morse v. Univ. of Vermont, 973 F.3d 122, 125 (2d Cir. 1992) ("We have ruled that discrimination actions brought pursuant to 42 U.S.C. §§ 1981 and 1983 are most analogous to personal injury actions under state law; hence, the corresponding state statute of limitations has been deemed controlling.").  The same is true for Section 1985 claims.  See Paige v. Police Dep't of Schenectady, 264 F.3d 197, 199 n.1 (2d Cir. 2001) ("The statute of limitations for actions brought pursuant to §§ 1983 and 1985 is three years."); Blankman v. County of Nassau, 819 F. Supp. 198, 206 (E.D.N.Y. 1993) ("A three year statute of limitations also applies to an action commenced pursuant to § 1985.").

        Although a state statute of limitations is used to compute time in Section 1983 and 1985

actions, "[f]ederal law determines when a federal claim accrues." <u>Eagleston</u>, 41 F.3d at 871

(citing <u>Cullen v. Margiotta</u>, 811 F.3d 698, 725 (2d Cir. 1987)). Under federal law, a cause of

action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of

his action." <u>Pearl</u>, 296 F.3d at 80 (quotation omitted); <u>Eagleston</u>, 41 F.3d at 871 ("The claim

accrues when the plaintiff 'knows or has reason to know' of the harm."). The Supreme Court has

instructed that, when analyzing the timeliness of a claim, "the proper focus is on the time of the

discriminatory act, not the point at which the consequences of the act become painful." <u>Morse</u>,

973 F.2d at 125 (quoting <u>Chardon v. Fernandez</u>, 454 U.S. 6, 8 (1981)) (emphasis omitted).

Accordingly, "[t]he crucial time for accrual purposes is when the plaintiff becomes aware that he

is suffering from a wrong for which damages may be recovered in a civil action." <u>Eagleston</u>, 41

F.3d at 871 (quoting <u>Singleton v. City of New York</u>, 632 F.2d 185, 192 (2d Cir. 1980)).

Plaintiff commenced the within action on September 1, 2009. Accordingly, any acts that

took place prior to September 1, 2006 are not actionable as they are barred by the three-year

statute of limitations. It is undisputed that plaintiff was terminated effective December 9, 2005.

(2d Am. Compl. ¶ 43.) Therefore, all of plaintiff's Section 1983 and Section 1985 claims are

time-barred since the act that forms the basis of plaintiff's claims - his termination - occurred

outside of the limitations period. Plaintiff argues, however, that the limitations period should be

extended under either the "continuing violation" doctrine[7] or the doctrine of equitable tolling.

---

[7] The continuing violation doctrine is typically applied in employment discrimination cases brought pursuant to Title VII. <u>See</u> <u>Bartoli v. City of New York</u>, No. 09-CV-4163, 2010 U.S. Dist. LEXIS 38455, at * 8 (E.D.N.Y. Apr. 19, 2010) ("The continuing violation exception is often invoked by plaintiffs bringing Title VII claims . . . ."). However, the Second Circuit has held that the continuing violation doctrine also applies to Section 1983 claims of discrimination, as plaintiff asserts here. <u>See</u> <u>Cornwell v. Robinson</u>, 23 F.3d 694, 703-04 (2d Cir. 1994)).

Plaintiff further argues that the filing of his discrimination charge with the SDHR tolled the limitations period.

1.   The Continuing Violation Doctrine

Under the continuing violation doctrine, "if a plaintiff has experienced a 'continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001) (quoting Gomes v. Avco Corp., 964 F.2d 1330, 1333 (2d Cir. 1992)).  A continuing violation may be found "where specific and related instances of discrimination are permitted . . . to continue unremedied for so long as to amount to a discriminatory policy or practice."  Fitzgerald, 251 F.3d at 259 (quoting Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994)).  Where a continuing violation is demonstrated, the plaintiff "is entitled to have a court consider all relevant actions allegedly taken pursuant to the . . . discriminatory policy or practice, including those that would otherwise be time barred." Fitzgerald, 251 F.3d at 359 (citing cases).

"As a general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances."  Kubicek v. Westchester County, No. 08-CV-372, 2009 U.S. Dist. LEXIS 117061, at *19 (S.D.N.Y. Oct. 8, 2009) (quoting Trinidad v. N.Y. City Dep't of Corr., 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006)); Bernstein v. Mony Group, Inc., 228 F. Supp. 2d 415, 418 (S.D.N.Y. 2002) ("As a general rule, courts in the Second Circuit have viewed continuing violation arguments with disfavor.").  Moreover, "discrete . . . acts are not actionable if time-barred, even where they are related to acts alleged in timely filed charges."  National R.R.

Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); see also Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir. 1996) ("[D]iscrete incidents of discrimination that are not the result of a discriminatory policy or practice will not ordinarily amount to a continuing violation.").  Rather, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Morgan, 536 U.S. at 113.

Here, plaintiff asserts that defendants continued to retaliate and discriminate against him after he was terminated in December 2005 through their harassment and intimidation of his witnesses.  (Pl. Mem. of Law 7-9.)  However, as discussed supra, plaintiff does not have standing to assert a claim of retaliation or discrimination based on actions allegedly taken by defendants against third parties.  Such conduct by defendants - whether true or not - does not amount to an adverse employment action against plaintiff.  See Garel v. City of New York, 2007 U.S. Dist. LEXIS 8536, at *4 (citing Kern, 93 F.3d at 44).

Accordingly, since plaintiff cannot sustain a claim for retaliation based on defendants' alleged harassment of his witnesses, there is no basis for extending the limitations period pursuant to the continuing violation doctrine.

2.      Equitable Tolling

Statutes of limitations for Section 1983 and 1985 claims may be equitably tolled "in exceptional circumstances." Perez v. Cuomo, No. 09-CV-1109, 2009 U.S. Dist. LEXIS 33290, at *17 (E.D.N.Y. Apr. 20, 2009).  "Like the limitations period, equitable tolling is governed by state tolling provisions." Id. (citing Wallace v. Kato, 549 U.S. 384, 394 (2007)) (additional citation omitted).  Under New York law, the statute of limitations period may be tolled "[i]f a person entitled to commence an action is under a disability because of infancy or

insanity at the time the cause of action accrues . . . ." <u>Perez</u>, 2009 U.S. Dist. LEXIS 33290, at

*17 (citing N.Y. C.P.L.R. § 208); <u>see also</u> <u>Harrison v. Lutheran Med. Ctr.</u>, No. 05-CV-2059,

2007 U.S. Dist. LEXIS 76064, at *13 (E.D.N.Y. Oct. 12, 2007) (same).  "The burden of

demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff."  <u>Graves v.</u>

<u>MidHudson</u>, No. CV-04-3957, 2006 U.S. Dist. LEXIS 81494, at *8-9 (E.D.N.Y. Nov. 8, 2006)

(quoting <u>Boos v. Runyon</u>, 201 F.3d 178, 185 (2d Cir. 2000)).  Plaintiff does not allege that he

was an infant or insane at the time his Section 1983 and 1985 claims accrued.  Nor does he allege

other exceptional circumstances that would justify application of equitable tolling on the facts

herein.

It should be noted that plaintiff appears to confuse the equitable tolling rules for federal

statutes of limitation with the state rules, asserting that equitable tolling should apply to

plaintiff's claims because the SDHR failed to complete an adequate and timely investigation of

his discrimination charge, resulting in injury to plaintiff.  (Pl. Mem. of Law 17.)  Under the

federal principle of equitable tolling - which would apply to discrimination claims brought under

Title VII, the ADEA or the ADA - a statute of limitations period may be equitably tolled where

"a party is prevented in some extraordinary way from exercising his rights."  <u>Zerilli-Edelglass v.</u>

<u>New York City Transit Auth.</u>, 333 F.3d 74, 80 (2d Cir. 2003).  However, because the statute of

limitations for Section 1983 actions brought in New York is borrowed from state law, so too are

the tolling rules for such claims.  <u>See</u> <u>Perez</u>, 2009 U.S. Dist. LEXIS 33290, at *17.  Even if the

Court were to apply the federal tolling rules, plaintiff would still not be entitled to have his

limitation period equitably tolled because, as the New York Supreme Court found, the SDHR

investigation was neither inadequate nor abbreviated.  Since the Court is bound by preclusion

rules to apply the judgment entered in the prior state court proceeding, there would be no basis

for equitably tolling the statute of limitations period on plaintiff's Section 1983 and 1985 claims.

See supra pages 11-14.

    3.  The Filing of an SDHR Discrimination Charge

     Finally, plaintiff asserts that the filing of a discrimination charge with the

SDHR on June 6, 2006 tolled the statute of limitations with respect to his Section 1983 and 1985

claims.  Plaintiff is simply incorrect.  While the filing of a discrimination charge with the EEOC

or the SDHR tolls the limitations period for Title VII - and other federal discrimination - claims,

"the statute of limitations for a § 1983 claim is not tolled by the filing of an EEOC charge."

Harper v. Hunter Coll., No. 95 Civ. 10388, 1999 U.S. Dist. LEXIS 2925, at *8 (S.D.N.Y. Mar.

15, 1999) (citing Board of Regents v. Tomanio, 446 U.S. 478, 484-86 (1980)) (additional citation

omitted); see also Baroor v. New York City Dep't of Educ., No. 06 CV 3965, 2009 U.S. Dist.

LEXIS 29319, at *19-20 n.3 (E.D.N.Y. Apr. 3, 2009), aff'd, 2010 U.S. App. LEXIS 1399 (2d

Cir. Jan. 21, 2010) (stating that "there is no provision under New York law that provides for

tolling during the period of time that a claimant seeks to pursue a different claim based on the

same facts") (citing Cates v. Trans World Airlines, Inc., 561 F.2d 1064, 1072-73 (2d Cir. 1977));

Jones v. L.I.R.R., No. 96-CV-0433, 1998 U.S. Dist. LEXIS 6298, at *14-15 (E.D.N.Y. May 1,

1998) (noting that the statute of limitations for a Section 1981 or 1983 claim "is not based upon

the filing of a charge of discrimination with the EEOC" but rather "is simply measured from the

time of the alleged discriminatory act").

   Based on the foregoing, plaintiff's Section 1983 and Section 1985 claims are time-barred

and should therefore be dismissed as untimely filed.

V.     Plaintiff's Remaining State Law Claims

The Second Amended Complaint also contains claims against the individual defendants in their individual capacities for gender discrimination and retaliation in violation of the New York Human Rights Law, as well as claims for waste and denial of equal protection under the New York State Constitution.  The Court notes that there is no legal basis provided in the Second Amended Complaint for plaintiff's claims of waste and denial of equal protection.  Rather, the Second Amended Complaint simply states that "defendants have deprived plaintiff of his rights to equal employment opportunities and equal protection of the law under the Constitution of the State of New York," (2d Am. Compl. ¶ 141), and that "defendants ha[ve] wasted state resources including, without limitation, state work time and salaries of Public Officers during the conduct of discriminatory and retaliatory acts described above."  (2d Am. Compl. ¶ 165.)  As pleaded, it is doubtful that either of the foregoing two claims state a claim for which relief may be granted.

However, whether or not the state law claims for waste and denial of equal protection fail to state a claim is irrelevant since all of the federal claims contained in the Second Amended Complaint are subject to dismissal.  As such, there is no longer any independent basis for federal jurisdiction in the within action.  Although the court has the discretion to exercise supplemental jurisdiction over plaintiff's remaining New York Human Rights Law claim, see 28 U.S.C. § 1367(a), I recommend that it decline to do so.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .");  Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").  "'Since [New York's CPLR § 205] allow[s] a

plaintiff to recommence a dismissed suit within six months without regard to the statute of limitations,' plaintiff[] will not be prejudiced by the dismissal of [his state law] claims." Tishman v. The Associated Press, No. 05 Civ. 4278, 2007 U.S. Dist. LEXIS 85588, at *28-29 (S.D.N.Y. Nov. 19, 2007) (quoting Trinidad v. N.Y City Dep't of Corr., 423 F. Supp. 2d 151, 169 (S.D.N.Y. 2006) (first alteration in original) (additional citations omitted).

Accordingly, I recommend that plaintiff's remaining state law claims be dismissed without prejudice.

## RECOMMENDATION

For the foregoing reasons, I recommend that defendants' motion to dismiss be granted and that plaintiff's Second Amended Complaint be dismissed in its entirety.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further appellate review. Thomas v. Arn, 474 U.S. 140, 145 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 299-300 (2d Cir. 1992).

**SO ORDERED:**

Dated: Central Islip, New York
       May 17, 2011


                                        /s/ E. Thomas Boyle
                                        E. THOMAS BOYLE
                                        United States Magistrate Judge